**BLOOD HURST & O'REARDON, LLP**
Timothy G. Blood (*admitted pro hac vice*)
Paula R. Brown (*admitted pro hac vice*)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1101
tblood@bholaw.com
pbrown@bholaw.com

**DiCELLO LEVITT LLP**
Amy Keller (*admitted pro hac vice*)
10 N. Dearborn St., Sixth Floor
Chicago, IL 60602
Tel: 312/214-7900
akeller@dicellolevitt.com

*Attorneys for Plaintiffs Richard Olivieri, Lauren Woon, Cynthia Ryan, Rosalia Garcia, Robert Jones, Kathy Martin, Maddalena Bowers Mari Miller, Amber Craig, Morgan Murphy, Jane Doe, Mary Doe, and the Putative Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| | **MDL No. 2:24-md-3126** |
| IN RE: SNOWFLAKE, INC. DATA SECURITY BREACH LITIGATION | District Judge Brian M. Morris |

## APPLICATION TO APPOINT AMY KELLER AND TIMOTHY BLOOD, AND THEIR PROPOSED LEADERSHIP TEAM AS INTERIM CLASS COUNSEL

1

## I.     INTRODUCTION

Choosing a leadership structure and appointing lawyers to fill that structure is akin to creating a law firm specially designed to litigate this case. The organization should be structured to maximize efficiency and be comprised of qualified attorneys with varying skill sets that will best represent the proposed Class throughout the course of the entire litigation. A ten-lawyer team consisting of Proposed Co-Leads Amy Keller and Timothy Blood ("Proposed Co-Leads"), supported by Liaison Counsel Bill Rossbach and Samir Aarab, and Plaintiffs' Steering Committee made up of Thomas Loeser, Yana Hart, John Morrison, Jesse Kodadek, Larry Golston, and Sean Petterson ("Proposed Leadership Team"), are best suited to maximize efficiency. We propose a leadership structure that focuses on specific litigation tasks, rather than the inherent duplication that comes from a rigid hub-and-spoke structure. For example, one lawyer can be primarily responsible for serving requests for production and interrogatories and negotiating the scope of document productions with each defendant—instead of six lawyers being responsible for that task with six different defendants. This is precisely how a law firm would staff such a matter.

Unlike a traditional, sprawling hub-and-spoke case that might be found in an antitrust conspiracy, this data breach litigation will focus on a discrete set of facts— Defendants' failure to take reasonable security measures to prevent the exfiltration of millions of Americans' personal data. While this case is large, it does not require

a team larger than ten lawyers, supported by leading Plaintiffs' firms, to efficiently and effectively protect the Class. In a case like this, a compact leadership team will minimize the risk of diluting the ultimate putative payouts to class members and avoid counsel seeking unnecessarily extensive and inflated fees. A structure that is too large and unwieldy often leads to inefficiencies, poor litigation, and negatively influences how the case is resolved by often prioritizing fees at the expense of the class recovery. Moreover, our leadership team will be personally involved in this case, as long as it takes, as our team is not tied up in dozens, if not hundreds, of other data breach cases.

In addition to our personal commitment to be the ones litigating this action, our defendant-agnostic structure allows for the dynamic use of the team of lawyers to meet the needs of the case at any given point in the litigation. This is precisely how law firms manage their lawyers assigned to a large case. A description of responsibilities for each is provided in the draft order attached as **Exhibit 1**.

Pursuant to the factors to be considered under Federal Rule of Civil Procedure 23(g) and the Manual for Complex Litigation, the attorneys proposed in this structure are diverse, collaborative, and are all well-qualified, and well-resourced to effectively and efficiently litigate this action. We respectfully request that the Court grant our application.

## II.    <u>BACKGROUND</u>

Plaintiffs' claims arise out of a breach that exposed consumers' private and sensitive information to criminal actors. Defendants, five of the world's largest corporations, entrusted customer data to Snowflake Inc.'s ("Snowflake") cloud-based data storage services. Snowflake promised to protect class members' personal information but did not. Class members' data is now ripe for the taking on the dark web. A number of plaintiffs filed suit against Snowflake, and a variety of Snowflake customer entities including, AT&T, Inc., Ticketmaster, LLC, Advance Auto Parts, Inc., Neiman Marcus Group, LLC, and LendingTree, LLC (together with Snowflake, "Defendants"). Mandiant, a leading cybersecurity firm that investigated the breach, has already notified "approximately 165 potentially exposed organizations" making it likely that the number of Defendants may grow as the full scope of the breach is revealed.

On October 4, 2024, the Judicial Panel on Multidistrict Litigation transferred the Snowflake-related cases to the District of Montana. MDL No. 3126, ECF No. 215 (J.P.M.L.). On October 21, 2024, this Court requested applications for leadership. Dkt. No. 79.

## III.    <u>THE LEGAL STANDARD</u>

Appointing a carefully chosen leadership structure in complex litigation serves the best interests of the parties, the proposed Class, and the Court. *See* Fed.

3

R. Civ. P. 23(g) and Committee Notes; Manual for Complex Litigation Fourth (2004), § 10.22. In appointing a leadership structure, the Court must consider: (1) what is the appropriate structure to most efficiently and effectively litigate this action; and (2) who should be included in that leadership structure.

The overarching goal of the Court in making its appointment is to make litigation more efficient. The Court "must balance desire to create a 'dream team' with several co-lead firms against the competing considerations of efficiency and economy." *See In re Data Sec. Cases v. Nelnet Servicing, LLC*, 2023 U.S. Dist. LEXIS 15332, at *27 (D. Neb. Jan. 30, 2023) (appointing leadership group that was more likely to prevent duplication) (citation omitted); *see also* Manual for Complex Lit. § 10.221. As a result, independent examination by the Court into appropriate leadership is critical. Manual for Complex Lit. § 10.224.

## IV.   <u>ARGUMENT</u>

### A. <u>A lean, Defendant-agnostic structure will prevent the duplication of work that is inevitable in "hub and spoke" cases.</u>

Ten lawyers is the ideal number to manage the "hub and spoke" structure of Defendants. This is so because our structure enables a focused team of dedicated and experienced class action lawyers to efficiently collaborate and divide work, minimizing duplication when handling overlapping arguments in motions to dismiss and overlapping discovery.

Plaintiffs propose that leadership be organized so that Lead Counsel organizes and directs litigation, strategy and tasks, which are then assigned to the PSC. Rather than focusing on a single Defendant, we propose that PSC members focus on specific litigation tasks—that is to say, certain PSC members will focus on law and briefing, offensive and third-party discovery, defensive discovery, experts, and settlement. There are numerous efficiencies to be gained from not divvying up similar litigation tasks across Defendants. A few lawyers dedicated to law and briefing is leagues more practical than six defendant-specific sub-committees requiring coordination.

Moreover, the critical issues that typically require resolution early in the litigation, such as Article III standing and the scope of the duty owed to Class Members, are unlikely to be defendant specific. These defendant-agnostic legal issues should be briefed by a few attorneys with strong legal writing chops, not six lawyers on six spokes. Likewise, Plaintiffs' experts are unlikely to be specific to Defendants; rather, damages and liability experts will focus on the same harms to Class Members and the same security failures within Snowflake and the same failures of the spoke-defendants' oversight of Snowflake. Moreover, Plaintiffs' discovery requests will largely look the same for all Defendants. We will seek evidence regarding Defendants' privacy policies, internal discussions about multi-factor authentication, policies regarding data breaches, confidentiality policies and practices, conversations with Snowflake, and the like.

The "hub-and-spoke" structure requires six different teams to draft discovery requests; Plaintiffs' proposal provides for specific individuals primarily responsible for this task. In turn, because our proposal will consolidate any discovery disputes, the parties can brief any motions to compel once, and Court will not be forced to adjudicate the same issue for different Defendants ad nauseam. Finally, Defendants will also likely serve similar, if not identical discovery requests on Plaintiffs. Our proposal permits Defendants to negotiate with one point of contact instead of six.

Further, our proposal ameliorates many of the problems created by the "hub-and-spoke" model. In our decades of experience litigating similar cases, including some of the cases referenced by other applicants, we have found that bigger is not necessarily better: if everyone is running the case, no one is. The "hub-and-spoke" structure creates work for many firms, but in no way guarantees that this work is being done, let alone done well. In our experience, the "spokes" diminish collaboration, because they silo information about workflow from the wider group and can cause certain litigation tracks to fall behind or stop progressing altogether. This issue is amplified where discovery reveals that certain claims or "spokes" are worth more than others and attorney incentives shift. Our model ensures that our team remains equally motivated to prosecute the case for the litigation's duration.

This structure is both appropriate for data breach cases, as our experience has borne out, and complex class action writ large. Other courts have noted that a smaller

team avoids inefficiencies and unnecessary costs. *See Trinity Lutheran Church of Columbia, Inc. v. Comer*, 2018 U.S. Dist. LEXIS 190824, at \*44 (W.D. Mo. Nov. 7, 2018) (noting the "disproportionate number of lawyers working on [a] relatively straightforward case necessarily created inefficiencies[;] [h]ad a smaller team been employed, there would have been fewer internal communications and less time spent by various attorneys to familiarize themselves with the case"); *In re Bystolic Antitrust Litig.*, 2020 U.S. Dist. LEXIS 212738, at \*8 (S.D.N.Y. Nov. 12, 2020) (appointing a smaller structure "sufficient to address the various complexities that may arise, while keeping unnecessary costs to a minimum.").

## B. <u>The specific roles in our structure are best suited for this data breach case.</u>

As detailed in **Exhibit 1**, our proposed structure will effectively and efficiently manage the case. Lead Counsel will be responsible for directing and managing all pretrial briefing and discovery and assigning work related to these tasks, coordinating expert retention and development, settlement discussions, managing the litigation fund and overall coordination, and preparing for trial. The Plaintiffs' Steering Committee, chaired by Lead Counsel, will coordinate efforts to share information, and develop and conduct discovery and other tasks to effectively litigate the case. Liaison Counsel, who are all Montana attorneys, will act as point people to the Court, assist in the prosecution of the litigation, assist with trial

preparation, and ensure that all discovery, filings, and notices are appropriately served and received.

This team and structure is particularly well suited to modern data breach litigation. Key threshold issues such as establishing Article III standing and the scope of Defendants' duty are well-trod ground as data breach litigation has increased in recent years. A Defendant-specific structure is unnecessary to address these issues as litigation over threshold questions such as Article III standing have largely settled key issues that vexed early efforts to seek redress on behalf of consumers and employees whose data was negligently maintained and, as a result, exfiltrated by criminals. Moreover, the passage of recent laws, such as the California Consumer Privacy Act, have greatly simplified data breach cases. And insurance coverage for data breaches has also become widely available, with most defendants having insurance for breaches.

Against this backdrop, many data breach cases have become commoditized. *See* Duane Morris Class Action Review (2024), at 11-12 (available at https://online.flippingbook.com/view/954167557/20/). A large number of firms file and quickly settle dozens of data breach cases a year. While those cases take little effort, this case requires more given the number of defendants, classes, and states involved. The proposed leadership team is not part of the network of firms that file dozens of data breach cases a year, allowing them to focus on this case. Our structure

has made the commitment and capacity to fully litigate this action as long as necessary to obtain meaningful relief for the classes. This will ensure that the Court does not have concerns that any resolution here inures to the benefit of the attorneys with little substantive relief for the classes of victims.

### C. **Counsel's work to date supports appointment.**

Lastly, federal courts routinely give deference to counsel in the first-filed case(s) when they are qualified to handle the action. Here, that would be counsel on this proposed slate, who first filed both *Ticketmaster* and *Snowflake* cases. *See, e.g.*, *Easton v. Bailey*, 2013 WL 12323847, at *11 (C.D. Cal. Jan. 4, 2013) (appointing as lead counsel the firms that were first to file, among consideration of other factors); *Ekin v. Amazon Servs., LLC*, 2014 WL 12028588, at *4 (W.D. Wash. May 28, 2014) (considering who filed the first complaint, among other factors, when selecting interim class counsel among competing applicants); *Moradi v. Adelson*, 2011 WL 5025155, at *3 (D. Nev. Oct. 20, 2011) ("[. . .] as the Moradi Plaintiffs where the first to file suit it would be appropriate to assign [their counsel] as lead counsel.") (internal citations omitted). Additionally, Mr. Blood and Ms. Hart worked with other plaintiffs' counsel on the joint submissions to the Court.

## V.    **PROPOSED LEAD COUNSEL AND THE LEADERSHIP TEAM**

Our proposed Co-Leads are recognized leaders in the data privacy and class action spaces, and, along with the PSC, have more than sufficient resources to timely

advance this litigation. Proposed Liaison Counsel are Montana lawyers experienced in coordinating complex litigation. We know what works for MDLs and this Court, and we also know that sprawling leadership models tend to bog litigation down. Quality, not quantity, is the key consideration here.

### A.    Co-Lead Counsel

#### *Amy Keller, DiCello Levitt LLP*

As Managing Partner of DiCello Levitt LLP's Chicago office, where she also chairs the firm's Privacy, Cybersecurity, and Technology litigation practice, Ms. Keller primarily focuses her practice on data privacy litigation and consumer protection. Since founding DiCello Levitt's technology practice group, she has been appointed to lead eight, separate data privacy class actions, including one of the largest data breach settlements ever achieved in the United States, and another data breach that has now been twice-certified to proceed as a class action. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247 (11th Cir. 2021); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 139 (D. Md. 2022), *vacated and remanded sub nom. In re Marriott Int'l, Inc.*, 78 F.4th 677 (4th Cir. 2023), *reinstated In re Marriott Int'l Customer Data Sec. Breach Litig.*, 345 F.R.D. 137 (D. Md. 2023).

Individually, Ms. Keller is recognized as one of the top privacy lawyers in the country. In 2022, Ms. Keller was named one of Crain's "40 Under 40" for her work

promoting and advancing diversity in the practice of law.[1] Chambers and Partners ranks the leading lawyers and law firms across the world. In 2024, for the third year in a row, Chambers and Partners ranked Ms. Keller as one of only twenty-six attorneys (and one of only three plaintiff's attorneys) in the country in "Privacy and Data Security: Litigation." As a result of her and her team's hard work, Ms. Keller's firm's technology practice group was recognized as Practice Group of the Year by *Law360* an unprecedented three years in a row (2020 through 2022), the *National Law Journal* in 2020 and 2022. Individually, Ms. Keller has been highlighted by Lawdragon in 2023 as one of its "500 Leading Plaintiff Consumer Lawyers" and as a 2023 "Litigation Star" in the Plaintiff Class Action section by Benchmark Litigation. Ms. Keller was elected to the American Law Institute in 2020, the leading independent organization in the United States producing scholarly work to clarify, modernize, and otherwise improve the law, and also serves on the Advisory Committee of the Sedona Conference's Working Group 11, focusing on issues of cybersecurity and privacy. In 2022, at age 39, Ms. Keller was invited by the Federal Judicial Center as one of only three plaintiffs' lawyers to speak with judges, professors, and defense counsel concerning necessary updates to *The Manual for Complex Litigation* (Fourth), where she discussed her experience litigating MDL

---

[1]    Amy    Keller,    Crain's    40    Under    Forty,    Class    of    2002, https://www.chicagobusiness.com/40-under-40/40-under-40-amy-keller.

00220361

cases and proposed changes to the Manual.

Ms. Keller will also have assistance from the significant resources of her firm, which has offices across the county in six different cities, plus a dedicated in-house focus group and mock jury practice, which was employed by her firm prior to winning an historic $102.6 million verdict in a class action trial in 2022 (together with Mr. Golston's firm). *Siqueiros, et al. v. General Motors LLC*, No. 3:16-cv-07244, ECF No. 566 (N.D. Cal.). Without the need to hire outside jury consultants, Ms. Keller's firm can save the class significant resources in any recovery. Finally, with a dedicated Privacy, Technology, and Cybersecurity practice group, the Proposed Team can draw on the resources of Ms. Keller's firm, which created the precedent on the valuation of consumer data in privacy litigation. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020).

The Court may contact the following individuals to speak about Ms. Keller's ability to serve as Co-Lead: Judge J. Michelle Childs of the Court of Appeals for the District of Columbia; Chief Judge Thomas Thrash of the District Court for the Northern District of Georgia; Judge Robert Michael Dow, Jr. of the District Court for the Northern District of Illinois; and Judge Wayne R. Anderson, current JAMS mediator and formerly of the District Court for the Northern District of Illinois and the Circuit court of Cook County, Illinois.

**_Timothy Blood, Blood Hurst & O'Reardon, LLP_**

Timothy Blood is the managing partner of Blood Hurst & O'Reardon, LLP ("BHO"), a firm that specializes in the prosecution of a wide variety of class actions throughout the country, including skillfully litigating complex class actions to verdict. Last year, he successfully tried a rare civil RICO class action, one of only a handful ever tried. He has achieved record-setting recoveries across a diverse range of fields, demonstrating expertise and unparalleled dedication. He has tried over half a dozen class actions, a feat few can claim. He has litigated data breach class actions for more than a decade, helped develop the early law for data breach class actions, secured many appellate victories in areas of consumer protection law relevant to data breach class actions and was instrumental in drafting and securing passage of the landmark California Consumer Privacy Act of 2018 ("CCPA") and the related California Privacy Rights Act of 2020 ("CPRA") – key claims which will be litigated in this proceeding. These statutes are critical in data breach actions because they create a private right of action for data breach victims, eliminate the difficulties associated with proving certain damages, and allow consumers whose data has been breached to recover statutory damages ranging from $100 to $750 per victim for each violation.

Mr. Blood has a passion for improving data protection and digital privacy. He is regularly invited to speak at leading cybersecurity industry conferences, where he

00220361

shares his deep expertise and insights with audiences of other thought leaders, lawmakers, businesses, and colleagues on both sides of the isle about cybersecurity laws, regulations, and emerging issues. Mr. Blood also currently serves on the San Diego Privacy Advisory Board, which reviews the vast array of technology used by the City of San Diego and makes recommendations to protect data and privacy.

Mr. Blood and his firm have been highly selective as to which cases to file, choosing to focus their practice on substantive litigation of class actions, avoiding a "sue and settle" model common with many data breach class actions. His goal is to obtain meaningful relief for consumers in class actions. This approach also allows Mr. Blood to commit his time and his firm's resources to litigating these MDL actions.

Some of the high-profile data breach class actions Mr. Blood has helped prosecute include appointment as Co-Liaison Counsel and member of the Plaintiffs' Steering Committee (effectively lead counsel) in *In re Sony Gaming Networks and Customer Data Security Breach Litigation*, MDL 2258 (S.D. Cal.), one of the largest data breach cases at the time. Mr. Blood is currently co-counsel with the San Diego City Attorney's Office in *People for Experian Data Corp.*, No. 37-2019-01047183 (Cal. Super. Ct., Orange Cnty.), which is a data breach notification action on behalf of the People of the State of California against a leading consumer credit reporting and data aggregation company. Mr. Blood also was appointed to the Plaintiffs'

14

Executive Committee in *Snyder v. the Regents of the University of California*, JCCP No. 589243 (Cal. Super. Ct., Los Angeles Cnty.), among others.

Mr. Blood has been appointed class counsel in dozens of cases, including to leadership roles in high-profile complex cases such as a member of the Plaintiffs' Steering Committee in *In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices, and Prods. Liab. Litig.,* MDL No. 2738 (D.N.J.), as class counsel in *In re Skechers Toning Shoes Prods. Liab. Litig.*, MDL No. 2308 (W.D. Ky., Hon. Thomas B. Russell) and as co-lead counsel in the California statewide coordinated action involving Toyota vehicles prone to sudden unintended acceleration, *In re Toyota Motor Cases*, JCCP No. 4621 (Cal. Super. Ct., Los Angeles Cnty.), and class counsel in *Warner v. Toyota Motor Sales*, Case No. 2:15-cv-02171-FMO-(FFMx) (C.D. Cal), which resulted in a $3.4 billion class recovery.

The variety and scope of consumer protection cases Mr. Blood has litigated is expansive. He curriculum vitae details the various types of class actions he has handled, some of his court-appointed leadership positions, the record-setting recoveries, the many appellate decisions in the area he has obtained, the groundbreaking work achieved through litigation with agencies such as the Federal Trade Commission in a public-private partnership rarely duplicated, and the many forums in which he has fought for consumer rights, including data and privacy rights.

Mr. Blood enjoys a reputation for integrity, civility, and an ability to bring

00220361

people together. In fact, the day after the hearing on leadership in this case Mr. Blood is an invited speaker at the annual convention of California's preeminent plaintiffs' organization, Consumer Attorneys of California; he will speak on how to practice law with civility. Mr. Blood is the founding member of the San Diego ESI Discovery Forum, consisting of judges and practitioners, past president of the Consumer Attorneys of San Diego, past executive board member of Consumer Attorneys of California, a member of the Federal Bar Association, and a member and team leader of the Welsh Inn of the American Inns of Court.

For references, Mr. Blood invites the Court to contact Chief Judge Dana Sabraw (S.D. Cal), Chief Judge Richard Seeborg (N.D. Cal.), Judge Vince Chhabria (N.D. Cal.), Judge Anthony Battaglia (S.D. Cal.), Judge Fernando Olguin (C.D. Cal.), Chief Judge Benjamin P. Hursh (Bankruptcy Court, D. Mont.), and Magistrate Judge Allison Goddard (S.D. Cal.).

## B.    Liaison Counsel

Mr. Aarab and Mr. Rossbach are leading Montana litigators who can aptly handle Liaison Counsel's role of effectively communicating the Court's directives, minimizing the need for Court intervention, and managing the cohesion among the group and opposing counsel. By virtue of being Montana-based attorneys, they will be able to maximize alignment between the Court and parties and have the time, attention, and ability to handle this responsibility. Mr. Aarab's experience in

representing the interests of his local peers in the Montana State Bar, and Mr. Rossbach's long leadership in the Montana Trial Lawyers and as Montana Governor on the Board of the American Association for Justice, combined with their extensive litigation and courtroom practice makes them ideal candidates for this position.

Mr. Aarab and Mr. Rossbach have a history of collaboration together in complex civil litigation, including toxic tort cases. Their complementary skills create a cohesive approach to managing intricate legal matters, balancing Mr. Rossbach's class action background and his 20 years as Liaison Counsel for Montana Attorney Generals with Mr. Aarab's trial expertise and local knowledge. Together, they will emphasize clear communication and effective coordination. Both attorneys bring experience in complex litigation that requires commitment and sustained effort.

### *Bill Rossbach, Rossbach Law, P.C.*

As highlighted by his extensive career focused on science and engineering-based litigation, spanning over three decades, and service as Liaison Counsel for four different Montana Attorney Generals[2] in Unfair Trade Practice/Consumer Protection and Public Nuisance litigation, uniquely positions him for the role of Co-Liaison Counsel. Mr. Rossbach's involvement in class actions, requiring multi-year coordination and rigorous case management, demonstrates his capacity for meeting

---

[2]    General McGrath, General Bullock, General Fox and General Knudsen.

the demands of this MDL.

Mr. Rossbach has worked on numerous large highly complex state and nationwide class actions, including a number of cases tried to verdict, which demonstrates Mr. Rossbach's ability to litigate highly complex actions through trial. Mr. Rossbach was the head of the science team in *Exxon Valdez Oil Spill* litigation, where he coordinated, organized, and prepared experts to prove injuries for more than 23,000 class members and individual as where he was also responsible for coordinating among 45 experts across different specialties and fields.

While working with the Attorney General and national counsel as discussed above, Mr. Rossbach filed suit against Merck, Eli Lilly, Astra Zeneca, Janssen, and Purdue; and other primary distributors involved in the Opioid supply chain including McKesson, Cardinal, and Amerisource. Before filing the suit there were no offers in any case that exceeded one million dollars. After filing suit and litigating these claims the cases settled in mediation or on the eve of trial for more than 80 million dollars. As the opioid litigation matured and cases were settled without litigation, Mr. Rosbach was appointed Special Assistant Attorney General to assist staff in the complex requirements of the national opioid settlements that now include the major national pharmacies, other opioid manufacturers, and marketing companies. These opioid settlements now amount to over 120 million dollars and require collaboration and approval of all fifty-six counties and the six largest cities. For the last two plus

00220361

years Mr. Rossbach's role with General Knudsen has included negotiating a Memorandum of Understanding with all local governments and their local and national counsel, interpretation of several thousand pages of settlement documents, assisting the Attorney General's staff in the development of infrastructure and methods for the administration and distribution of the settlement funds, and being liaison as needed with defense counsel, local governments, and the National Settlement Administration that distributes the settlement funds to State and local governments.

Mr. Rossbach has worked with hundreds of the best plaintiff and defense lawyers in Montana, and in the country, with the reputation of carrying civility and collaboration into all facets of his work. While his priority has always been to advocate for his clients, Mr. Rossbach has a deep understanding that successful advocacy rests on the fundamental principle of following the Golden Rule in all interactions with co-counsel, defense counsel, the Court and its staff. Mr. Rossbach is a member of the American Board of Trial Advocates and the Montana trial bar, who for many years has been designated with the Martindale "Preeminent" rating.

Mr. Rossbach is extremely selective in the cases he litigates. After becoming associated as counsel to file the first, third and fourth Snowflake cases in this Court, in anticipation of the possibility of becoming fully engaged in these cases Mr. Rossbach has taken no new cases, thus he is willing and has the ability to commit to

a lengthy and time-consuming process.

Mr. Rossbach has significant leadership experience is his class action work and as Attorney General Liaison. Honorable Donald W. Molloy, the Honorable Dana Christensen, and Honorable Russell Holland can attest to Mr. Rossbach's ability to cooperatively, ethically, and zealously litigate a complex case.

### *Sam Aarab, Boland Aarab PLLP*

As a litigator, Mr. Aarab has demonstrated repeatedly that he is committed to favorable case resolution, even if the process takes years to complete. Mr. Aarab's particular leadership experience in managing larger groups of attorneys is evident in both his litigation practice and in his service to the State Bar. Mr. Aarab was elected twice to represent a large and diverse group of attorneys and in this role he was recognized for his service to the bar. In short, Mr. Aarab has demonstrated the ability to lead by consensus both in and outside the courtroom. Mr. Aarab's career has included cases such as *Konesky v. Keller*, which spanned years of strategic preparation and courtroom work. He has also handled cases from complaint through appeals, with courtroom experience covering thousands of hours in both federal and state courts across Montana. Mr. Aarab's practice includes significant Montana-based civil cases, such as *Gallagher v. Cascade County*, and high-stakes trial work, including *State v. Parker*. Mr. Aarab's focus on consumer protection cases such as *Stevenson v. Ally Financial* aligns with the MDL's objectives, complementing Mr.

20

00220361

Rossbach's national-level experience discussed below.

Mr. Aarab brings a depth of experience and knowledge to the MDL from his background in Montana courts, along with a demonstrated ability to lead in complex litigation settings. He offers a strong understanding of Montana's legal landscape, honed litigation skills, and the capacity to manage large groups in multifaceted legal proceedings to which Judge Elizabeth Best of the Eighth Judicial District of Montana can attest.

### C.    Plaintiffs' Steering Committee

#### *Thomas E. Loeser, Cotchett, Pitre & McCarthy, LLP*

Tom Loeser is the Co-Managing Partner of the Seattle office of Cotchett, Pitre & McCarthy, LLP, one of the nation's leading class action and plaintiff's trial firms.[3] His particular expertise in technology, including writing code, as well as product and legal work in Silicon Valley, and his nearly five-years as an Assistant United States Attorney in Los Angeles including in the Cyber and Intellectual Property Crimes Section, provides a unique skill set to benefit the class from day one through trial and any appeals. Mr. Loeser has a long history and well-earned reputation of working respectfully and free of divisiveness in the technology, privacy, data breach and consumer protection bars, which will allow him to work cooperatively and efficiently with the highly skilled and well-qualified attorneys the Court may appoint here.

---

[3]    *See* Mr. Loeser's resume is attached as Exhibit 9.

21

Mr. Loeser prosecutes data/privacy cases that involve particularly sensitive information, egregious corporate malfeasance, or massive data sets exposing the information of tens of millions of consumers. For these reasons, he is presently serving on the steering committee of two nationwide MDL data breach cases, *In re T-Mobile 2022 Consumer Data Sec. Breach Litig.* ("*T-Mobile II*") and *In re AT&T, Inc. Customer Data Sec. Breach Litig.* ("*AT&T*") and is co-lead in four other non-mdl data breach cases. He is, therefore, willing and able to commit his personal time to a lengthy and time-consuming process in service of the putative class.

Tom Loeser is an AV *Preeminant* rated SuperLawyer and member of Lawdragon's 500 Leading Lawyers in America and the National Trial Lawyers Top 100 Trial Lawyers. He is a 25-year technology trial lawyer with 18 years of privacy and data class action experience and hard-science and high-technology bona fides. His technology career includes the authorship of code for the Treasury at Microsoft and product analysis at the Hewlett-Packard Company. His legal career began in Silicon Valley.

In 2002, Mr. Loeser became an AUSA in Los Angeles and then a member of the Cyber and Intellectual Property Crimes Section. This entailed months of training in the investigation and prosecution of hacking, computer intrusion, malware, and data breach cases, including detecting and investigating hacking by state-sponsored and foreign black-hat operators. It also included specialized training in investigation of the

22

"dark web," where PII from this breach was discovered. He has a deep understanding of the technological parameters of a data breach. And his unique experience working within government agencies at the forefront of the cyber-war gives perspective and insight that will benefit the class. Many of his cyber-prosecutor colleagues work at firms that are retained by corporations like Defendants here. It is fitting that the class should have the same level of critical expertise in the prosecution of this case that Defendants will have in their defense.

Mr. Loeser has succeeded in highly technical class cases, including *In re Carrier IQ, Inc., Consumer Privacy Litig.*, *In re: T-Mobile I* and *II* and *Sheikh v. Tesla*, where he was appointed class counsel. At final approval of a complex settlement, Judge Beth Labson Freeman remarked on the record:

> I will reiterate that Class Counsel has demonstrated over many years, superior experience and capability in handling class actions of this sort. It's not simple, you make it look easy, and that is the art of what you do, Mr. Loeser, and the Court certainly appreciates the good work in this case, and in recognition of the many cases that your firm has handled over the years.[4]

Pertinent here, in *Carrier IQ* plaintiffs overcame motions to compel arbitration of cellular providers, including AT&T and Sprint (now part of AT&T). In *Rajagopalan v. Noteworld*, 718 F.3d 844 (9th Cir. 2013), Mr. Loeser established 9th Circuit law limiting companies' ability to use one-sided adhesion contracts for

---

[4]     *Sheikh v. Tesla, Inc.*, No. 5:17-cv-02193-BLF (N.D. Cal.) (Oct. 17, 2018 Hr'g Tr. at 12).

arbitration in a consumer context. The 2022 T-Mobile case, where Mr. Loeser was appointed to the PSC, and the AT&T Data Breach Litigation where he also has a leadership position are now litigating whether the arbitration clauses are enforceable.

The Court may contact Judge Wimes, in the Western District of Missouri. (816-512-5390). Judge Wimes interviewed Mr. Loeser for *T-Mobile II* and granted his leadership application. Hon. Wayne Anderson (Ret.) of JAMS, a nationally recognized data breach mediator, can speak to Mr. Loeser's collegiality, effectiveness and abilities. (Tel: 847-650-6844; E-mail: wa@adrwa.com).

### *Yana Hart, Clarkson Law Firm, P.C.*

Yana Hart immigrated from Kazakhstan and Russia as a teenager who could not speak English. With little money or family support, she prioritized her education and worked odd jobs to pay for college tuition and room and board. The embodiment of hustle and perseverance, Yana graduated at the top of her undergraduate class and decided to go to law school. Near the end of her 3L year, the law school dean called Yana to notify her of an honor she had earned, but Yana had to consult a dictionary to learn the meaning of the word: "Valedictorian." In the span of a decade, Yana earned top educational honors, mastered the English language, became a proud U.S.

citizen, and began her successful career as a public interest lawyer, fighting for the underdogs of the world.

Ms. Hart is now a partner at Clarkson Law Firm, P.C., a national public interest law firm of 32 lawyers, where she oversees the Data Privacy Litigation Department. Ms. Hart's deep expertise in data breach class actions is complemented by her collaborative style, unique background, and critically diverse perspectives. While Ms. Hart's data breach expertise and leadership in this and other matters alone qualifies her for this appointment, her remarkable lived experience will also bring to leadership a unique perspective rarely represented.

For over a decade, Ms. Hart has represented plaintiffs in hundreds of cases, mostly in federal courts throughout the nation, and she has overseen many complex privacy and data breach class actions. Most recently, the Honorable Jeffrey S. White appointed Ms. Hart Interim Co-Lead of *In re Dropbox Sign Data Breach Litigation,* No. 4:24-cv-02637-JSW, Dkt. 41 (N.D. Cal. Oct. 9, 2024).[5]

Ms. Hart's Data Privacy Department is dedicated to handling complex cases. The Department deliberately maintains a limited number of cases to ensure Ms. Hart

---

[5]     Other recent examples of Ms. Hart's privacy and data breach work include *B.K. et al. v. Desert Care et al*., No. 2:23-cv-05021-SPG-PD (C.D. Cal., Feb. 1, 2024) (defeating pleading challenges for critical claims involving medical disclosure of patient information); *M.M., et al. v. Los Angeles Unified School District*, No. 22STCV37822 (Super. Ct. L.A. County, July 2, 2024) (Ms. Hart obtaining successful order overruling the demurrer against a third-party data vendor

can commit the necessary time and resources to handle matters through trial and appeal, as required, and otherwise fully litigate important matters like this one. Ms. Hart's commitment has been on display in this matter from the very start, as her team has been at the center of critical work seeking to hold Ticketmaster, Snowflake, and others accountable for the harm to hundreds of thousands of consumers. Ms. Hart filed the first class action in the nation against Ticketmaster—the largest "spoke"— in the Central District of California. Then, as a result of her detailed and ongoing investigation into the facts and claims at issue, Ms. Hart's team uncovered the full extent of Snowflake's involvement in the Ticketmaster and other breaches, resulting in Ms. Hart to again be the first lawyer in the nation to pursue relief for aggrieved consumers, filing the first action against Snowflake—the "hub"—in this Court.

Since filing these initial actions, Ms. Hart and her team have heard from and interviewed dozens of victims of the data breach regarding their experience and damages, many of whom are ready to join this action as plaintiffs if necessary. With her characteristic collaborative style, Ms. Hart also began immediately convening and leading a large group of plaintiffs across separate, later-filed actions to organize and efficiently advance the Ticketmaster actions in the Central District of California,

---

responsible for data breach disclosing highly sensitive personal and medical information); *C.M., et al. v. MarinHealth Medical Group, Inc*., No 3:23-cv-04179-WHO (N.D. Cal., Jan. 19, 2024) (defeating motion to dismiss on all but one count in a class action involving disclosure of medical information).

while also agreeing to serve as local counsel in many of them. She led briefing efforts in the process of consolidation and leadership applications, following her extensive private ordering efforts through which she earned the respect and support of several firms across other related actions.

Ms. Hart's data breach experience is also complemented by deep experience at every functional stage of the litigation process. She has litigated many complex consumer class actions nearly through trial, and also had successfully briefed appeals in both federal and state courts.[6] A recent example of Ms. Hart's ability to litigate complex matters successfully is *Gunaratna, et al., v. Dr. Dennis Gross Skincare, LLC* (C.D. Cal. No. 2:20-cv-02311-MWF-GJS), a certified false advertising class action led by Ms. Hart. Last month, after years of arduous litigation, she gained final approval for a settlement that awarded nearly full restitution (73%) to participating class members, resulting in a claims rate that, at 23.8%, was more than 5 times what is typically seen in similar matters.[7] The Honorable Michael Fitzgerald of the Central

---

[6]     Recent examples include *Prescod v. Celsius Holdings, Inc.*, No. 19STCV09321 2021 WL 5234499, at *27 (Aug. 2, 2021) (successfully opposing two appellate writs in favor of consumers resulting in a nationwide settlement before Hon. Kenneth Freeman); *Salazar v. Target Corporation*, 83 Cal.App.5th 571 (2022) (obtaining a reversal on appeal of an order sustaining a demurrer); *Baton et al. v. Ledger SAS et al.*, 2022 WL 17352192 (9th Cir. 2022) (obtaining a reversal of a district court's dismissal of data breach action on jurisdictional grounds, and subsequently obtaining a denial of a motion to dismiss on the merits)

[7]     *Kandel et al. v. Dr. Dennis Gross Skincare, LLC*, No. 1:23-cv-01967-ER (final approval by Judge Ramos where the nationwide class action was filed).

District of California presided over the matter and can attest to the quality of Ms. Hart's work, diligence, and professionalism through the years of litigation. *Gunaratna*, 2023 U.S. Dist. LEXIS 60796, at *74 (C.D. Cal. Apr. 4, 2023) (observing the team led by Ms. Hart is "experienced, knowledgeable, and competent; that they will zealously advocate on behalf of the class; and that they will dedicate substantial time and resources litigating this action.")

In addition to securing excellent results for consumers in privacy and other class actions, Ms. Hart also has functional trial experience. In a civil rights matter before Judge Battaglia in the Southern District of California, which Ms. Hart took on a pro bono basis, she served as second chair of the full jury trial, handling almost all the substantive trial preparation, motions in limine, as well as the cross examination of several witnesses. *James v. Agnew et. al*., No. 3:15-cv-409 (S.D. Cal. 2018). Like Judge Fitzgerald, Judge Battaglia can also attest to the quality of Ms. Hart's work and her dedication and diligence overall.

The respect Ms. Hart has earned from her colleagues in this matter, across the privacy bar, and members of the federal judiciary before whom she has meaningfully litigated is also evident in her recent appointment as the Lawyer Representative for the Southern District of California. Chief Judge Dana M. Sabraw noted: "Although

there were many highly qualified attorneys applying for the position, the judges were particularly impressed by [Ms. Hart]."

### *Larry Golston, Beasley Allen*

Larry Golston is a Principal in the Consumer Fraud Section of Beasley, Allen, Crow, Methvin, Portis, & Miles, P.C. ("Beasley Allen"), a national law firm headquartered in Montgomery, Alabama, with additional offices in Mobile, Alabama and Atlanta, Georgia. Mr. Golston was a part of the legal team that obtained a $700 million settlement for thousands of Alabama PCB contamination victims; a case involving the largest environmental tort settlement in the country at the time. Mr. Golston served as lead counsel on behalf of the United States and qui tam relators in False Claims Act litigation with results to-date of settlements and verdicts exceeding $50 million. Additionally, Mr. Golston has served as lead counsel in collective action class litigation arising under the Fair Labor Standards Act. Beasley Allen has obtained verdicts and settlements amounting to nearly $30 billion, representing plaintiffs in personal injury, products liability, consumer fraud, class actions, business litigation, and mass tort litigation.[8] Attorneys from Beasley Allen have been selected by federal courts as lead counsel or co-lead counsel in 17 MDLs and have been appointed to the Plaintiffs' Executive Committee and/or Steering

---

[8]      List of Beasley Allen's record verdicts and settlements available upon request.

Committee in 42 additional complex MDLs.[9]

Currently, Mr. Golston is serving on the Plaintiffs' Steering Committee in the AT&T Data Breach Litigation MDL No. 3:24-md-03114-E, Judge Ada Brown presiding. Mr. Golston has worked as co-counsel directly with his law partner W. "Dee" Miles, III who served on the Plaintiffs' Steering Committee in the Home Depot data breach class action and Target data breach litigation assisting in the recovery of $39.4 million on behalf of banks and credit unions. In 2013, Mr. Golston spoke on data breach litigation at the Harris-Martin Target Data Breach Litigation seminar in San Diego, California about the issues involved in data security breaches.

Mr. Golston is considered among the best Consumer Attorneys in the United States having been named as Lawdragon 500 "Leading Consumer Lawyers in America" in 2022, 2023 and 2024. Mr. Golston is "AV" rated by Martindale-Hubbell and has been named a "Best Lawyer" by The Best Lawyers in America magazine for 2022. Mr. Golston has also devoted significant time and resources to leading and serving his colleagues in the legal profession. Mr. Golston served as the president of the Alabama Lawyers Association, the oldest and largest association of African American attorneys in the State of Alabama (an affiliate of the National Bar Association). Mr. Golston is also the founder and first chairperson of the Adams-Shores Minority Attorney Caucus of the Alabama Association of Justice (ALAAJ).

---

[9]     List of Beasley Allen's MDL appointments available upon request.

Through various leadership roles, Mr. Golston has demonstrated an ability to work cooperatively, provide valuable information, build consensus and lead lawyers in numerous litigations, including data breach litigation.

Mr. Golston and Beasley Allen have been involved in many multi-million dollar and even billion-dollar complex litigation cases including MDL, mass tort, and class action cases that required substantial financial resources in multi-million-dollar commitments, attorney personnel and support staff. Mr. Golston is prepared and committed to this action, and he is willing to commit the time, financial resources and manpower to this litigation to the fullest extent. Mr. Golston has the expertise and knowledge to successfully contribute to this action.

Finally, if appointed, Mr. Golston would also provide a valuable and diverse perspective regarding this litigation that would benefit all clients and the entire leadership team.

### *Sean Petterson, Lieff Cabraser Heimann & Bernstein LLP*

Mr. Petterson is a partner in Lieff Cabraser's New York City office and a member of the firm's award-winning Cybersecurity & Privacy Group. A 2015 graduate of New York University School of Law, Mr. Petterson has served an instrumental role on Lieff Cabraser's work in the twice certified Marriott data breach litigation. *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 139 (D. Md. 2022), *vacated and remanded sub nom. In re Marriott Int'l,*

*Inc.*, 78 F.4th 677 (4th Cir. 2023), *reinstated In re Marriott Int'l Customer Data Sec. Breach Litig.*, 345 F.R.D. 137 (D. Md. 2023). In particular, he worked closely with Plaintiffs' key liability and damages experts, helped draft critical briefs, and deposed Marriott's witnesses. Likewise, in *In re American Medical Collection Agency, Inc. Customer Data Sec. Breach Litig.*, MDL-2904, Mr. Petterson has served a key role supporting his partner, Jason Lichtman, who is one of three co-leads in the "Quest" track. Specifically, Mr. Petterson has worked closely with liability experts and as such has a detailed technical knowledge of cybersecurity best practices.

Mr. Petterson has also brought cases alleging violations of the Illinois Biometric Information Privacy Act alleging that technology in commercial trucks that captures drivers' biometrics violates the law. He has again played a key role in understanding the technology at issue and deposing key technical experts. In addition to his work on privacy matters at Lieff Cabraser, Mr. Petterson was also on the Lieff Cabraser team that reached two record-breaking shareholder derivative settlements—*In re The Boeing Co. Derivative Litig.*, Consol. C.A. No. 2019-0907-MTZ (Del. Ch.) ($237.5 million settlement) and *In re Wells Fargo & Co. Derivative Litig.*, 16-cv-5541-JST (N.D. Cal.) ($240 million settlement). Mr. Petterson also brings a breadth of experience as a former member of the defense bar as an associate at Boies Schiller Flexner LLP.

Mr. Petterson will be closely supported by Lieff Cabraser's Cybersecurity &

Privacy Group, including Mr. Lichtman in particular. Salt Lake City-based Mr. Lichtman was appointed to the Plaintiffs' Steering Committee in the Marriott Data Breach action and is a Co-Lead of the Quest Track in the AMCA Data Breach action. Mr. Lichtman has played a key role in briefing and working with damages and liability experts in both cases, a role that he also played in two other large data breaches—*In re Anthem Data Breach Litig.*, No. 15-cv-2617 (MDL 2617) (N.D. Cal.) ($115 million settlement) and *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-md-2633 (D. Or.) ($74 million settlement).

The Court can contact Judge Sara Ellis of the Northern District of Illinois and Judge James R. Epstein (ret.) of JAMS who can attest to Mr. Petterson's qualifications.

### *John Morrison, Morrison Sherwood Wilson Deola P.LLP*

As a senior member of the Montana trial bar for nearly three decades, Mr. Morrison brings extensive experience in complex litigation, including numerous successful class actions as both lead and co-lead counsel. His career encompasses trials and appeals in both state and federal courts, marked by strong collaborative relationships with co-counsel and legal teams across diverse cases. Mr. Morrison has extensive experience with complex and time-consuming cases; therefore, he understands the magnitude of time and work necessary to dedicate to a case such as this, and he is more than ready to dive in. Mr. Morrison has tried more than twenty

00220361

cases to verdict or judgment and argued more than twenty appeals including many cases of first impression.[10] Mr. Morrison won numerous landmark decisions in the Montana Supreme Court, the United States Courts of Appeals, and has been a part of several in the Supreme Court of the United States.

Mr. Morrison's ability to lead complex litigation and foster effective collaboration is also evident through his extensive contribution to the legal field and public service. This includes Mr. Morrison's position as State Auditor of the Insurance and Securities Commissioner of Montana, 2001 to 2008, a member of the Montana Bar Association Ethics Committee since 1998, and a Certified Civil Trial Advocate with the National Board of Trial Advocacy (NBTA) since 2000. He also serves as an adjunct law professor at the University of Montana and is a member of

---

[10]    *Butler v. Central United Life Ins.* (2017-2022) (nationwide class action certified and litigated on the merits, involving handling of an appeal before the Ninth Circuit); *Depot v. "Caring for Montanans, Inc." and HCSC* (2016-2023) (Mont. District Court, U.S. District Court, Montana Supreme Court, 9th Circuit, and the Supreme Court of the United States) (Lead counsel on behalf of 3000 Montana small businesses which resolved in class settlement); *Turner v. Billings Clinic et al.* (D. Mont. 2017-2019) (successful multi-lateral settlement negotiation, approval and distribution with independent fiduciary); *Montana Health CO-OP v. United States* (2016-2024) (Court of Federal Claims; litigated up to settlement); *Lamping et al v. American Home Products* (1999-2000) (D. Mont.) (Co-Lead counsel on behalf of the first medical monitoring class in which he obtained successful certification, settlement, approval, and distribution); *State v. Piper Jaffrey and Tom O'Neil* (2001-2003) (represented the Securities Department as lead litigation counsel); *State of Montana v. Phillip Morris et al.* (1996-1999) (Assembled and led team of six Montana lawyers assisted by Montana Attorney General in a complex matter which ultimately resolved on a global basis).

00220361

the inaugural classes of Leadership Montana and Leadership Montana Indigenous Immersion Initiative. Mr. Morrison's diverse experience, combined with an extensive track record in litigation, uniquely positions him for a pivotal role on the Litigation Committee in this case.

### *Jesse Kodadek, Parsons Behle & Latimer*

Missoula-based Mr. Kodadek of Parsons is a seasoned litigator well suited to a leadership role in this case. Mr. Kodadek has extensive experience representing plaintiffs in class actions and other high-value litigation in Montana state court and the District of Montana, as well as at the Ninth Circuit. Of note, Mr. Kodadek served as lead counsel in *Kramer v. Fergus Farm Mutual Ins. Co.*, No. DA 19-0682 (Montana), wherein the court certified a statewide class that survived an appeal. He is also lead counsel in *LH Residential v. Allied Waste Services of N. Am.*, which was also certified as a class action in the Fourth Judicial District Court in Missoula County. He has also argued before the Ninth Circuit on multiple occasions. He is currently lead counsel in *Dow v. Safeco Ins. Co. of Am.*, No. 20-cv-31-BLG-SPW (D. Mont.), where he recently argued a summary judgment and class certification appeal before the Ninth Circuit., and he also represented LL Liquor in *LL Liquor, Inc. v. State of Montana*, No. 15-cv-71-H-SEH (D. Mont.), a breach-of-contract case where he argued three separate appeals and obtained a $5.7 million judgment.

Parsons is the one of the largest Mountain West-based law firms with a

significant Montana presence, with over 200 attorneys and 11 offices in Montana, Utah, Nevada, Wyoming, and Idaho—including 15 attorneys in Montana. Parsons' attorneys have successfully litigated in the class action and mass torts spaces, and Parsons is capable of and willing to devote substantial resources to this case.

The Court may contact Judge Dana Christensen of the District of Montana and Judge Jason Marks of the Montana Fourth Judicial District Court, Missoula County regarding Mr. Kodadek's qualifications.

## IV.    <u>CONCLUSION</u>

Each of proposed Co-Leads, Liaison, and Plaintiffs' Steering Committee members will commit all necessary resources to represent Plaintiffs and the Classes in this action, have the willingness and ability to ensure the effective progress of this litigation, and have the experience and resources to handle any procedural scenario presented in this case, through a jury trial and appeals. The proposed leadership group also offers a diversity of experience, gender, racial, and ethnic identity, as well as life experiences, will ensure efficiency, and will be in the best interests of the putative Classes. We respectfully request the Court grant our application.

Respectfully submitted,

Dated: November 7, 2024           **BLOOD HURST & O'REARDON, LLP**

By:          *s/ Timothy G. Blood*
          TIMOTHY G. BLOOD

Timothy G. Blood (*admitted pro hac vice*)

36

00220361

Paula R. Brown (*admitted pro hac vice*)
501 West Broadway, Suite 1490
San Diego, California 92101
Tel: 619/338-1100
tblood@bholaw.com
pbrown@bholaw.com

Dated: November 7, 2024                     **DiCELLO LEVITT LLP**

By:                *s/  Amy Keller*
─────────────────────────────────
             AMY KELLER

Amy Keller (*admitted pro hac vice*)
10 N. Dearborn St., Sixth Floor
Chicago, IL  60602
Tel: 312/214-7900
akeller@dicellolevitt.com

*Attorneys for Plaintiffs*

**ROSSBACH LAW, P.C.**
William A. Rossbach
401 North Washington Street
P.O. Box 8988
Missoula, MT  59807-8988
Tel: 406/543-5156
bill@rossbachlaw.com

**BOLAND AARAB PLLP**
Samir F. Aarab
11 Fifth Street N., Suite 207
Great Falls, MT  59401
Tel: 406/315-3737
sfaarab@bolandaarab.com

**LIEFF CABRASER, HEIMANN
   & BERNSTEIN LLP**
Sean A. Petterson
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel: 212/355-9500
spetterson@lchb.com

**BEASLEY, ALLEN, CROW,
   METHVIN, PORTIS & MILES, P.C.**
Larry A. Golston
Post Office Box 4160
Montgomery, AL  36103-4160
Tel: 334/269-2343
Larry.golston@beasleyallen.com

**CLARKSON LAW FIRM. P.C.**

00220361

Yana Hart
22525 Pacific Coast Highway
Malibu, CA  90265
Tel: 213/788-4050
yhart@clarksonlawfirm.com

**COTCHETT, PITRE &**
  **McCARTHY LLP**
Thomas E. Loeser
999 N. Northlake Way, Suite 215
Seattle, WA  98103
Tel: 206/802-1272
tloeser@cpmlegal.com

**PARSONS BEHLE & LAHTIMER**
Jesse Kodadek
127 East Main Street, Suite 301
Missoula, MT  59802
Tel: 406/317-7220
jkodadek@parsonsbehle.com

**MORRISON SHERWOOD WILSON**
  **DEOLA PLLP**
John Morrison
401 N. Last Chance Gulch
Helena, MT  59601
Tel: 406/442-3261
john@mswdlaw.com

00220361